**Frank Madarin TASBY, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–02–00110–CR.**

Court of Appeals of Texas,
Eastland.

May 15, 2003.

---

John G. Tatum, Richardson, for appellant.

Bill Hill, Dist. Atty., Criminal Dist. Attorney–Appellate Section, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

### Opinion

TERRY McCALL, Justice.

A jury convicted appellant of aggravated robbery. TEX. PENAL CODE ANN. § 29.03 (Vernon 2003). The jury further found that appellant had a prior felony conviction and sentenced appellant to confinement for life and a $10,000 fine. TEX. PENAL CODE ANN. § 12.42(c)(1) (Vernon 2003). We affirm.

### Issues Presented

Appellant presents nine points of error in this appeal. In Points of Error Nos. 1 and 2, appellant challenges the legal and factual sufficiency of the evidence. In Points of Error Nos. 3 through 5, appellant challenges the exclusion of three venire members who were struck for cause. In Point of Error No. 6, appellant argues that he was denied a speedy trial. In Point of Error No. 7, appellant questions the trial court's decision to deny his motion to suppress evidence. In Point of Error No. 8, appellant argues that the trial court erred by allowing a tainted in-court identification; and, in Point of Error No. 9, appellant argues that the State did not prove an extraneous offense beyond a reasonable doubt. We will address the points of error in the order they occurred during trial.

### Background Facts

As she was leaving a liquor store on June 22, 2001, Maria Lupian noticed four black men exiting a green Eclipse and entering the liquor store. Lupian had a feeling something bad was about to occur,

so she noted the make, color, and model of the vehicle; and wrote down the license plate number. As she was entering her car, she heard and saw gunshots from inside the liquor store. Lupian drove to a 7–Eleven where there were some pay phones to wait for the police to arrive. Lupian later picked appellant and one other suspect out of picture lineups and also identified appellant in open court as one of the men entering the store.

The liquor store was owned by Can Phan. She was helping a customer when the men entered her store. One of the men immediately shot Phan and stepped on her as he proceeded to take money from the cash register. The men also took a pistol owned by Phan and both surveillance tapes from the store. The men also shot Rodney Griffin, a 17–year–old employee, and threatened Phan's husband and 12–year–old son. As a result of the shooting, Phan is confined to a wheelchair for life.

Police determined the ownership of the green Eclipse and found the car parked at the owner's home. The police set up a surveillance of the residence. At approximately 11:55 p.m. that same night, police observed a brown Cadillac stop at the house and saw a person from inside the house enter the car. Then the car left at a high rate of speed. Officer Jeff Burge followed the car in a marked police car. The police initiated a traffic stop after the driver committed two traffic violations. Appellant was the passenger in the car. The police discovered one of the surveillance tapes from the liquor store under the front seat of the car and found a gun in appellant's pocket. Appellant's gun was later determined to be one of the guns used in the robbery.

### Voir Dire Challenges

■■■ In his third, fourth, and fifth points of error, appellant contends that the trial court erred in granting the State's challenges for cause regarding three members of the venire. The trial court granted the challenges on the ground that the venire members could not follow the law. TEX. CODE CRIM. PRO. ANN. art. 35.16(b)(3) (Vernon Supp.2003). To show error, appellant must show that the trial court's action was incorrect and the record must show that the error caused harm to the defendant that justifies a reversal. *Bell v. State*, 724 S.W.2d 780, 795 (Tex.Cr. App.1986), *cert. den'd*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). The misapplication of Article 35.16(b)(3) is not constitutional error. *Jones v. State*, 982 S.W.2d 386, 391 (Tex.Cr.App.1998), *cert. den'd*, 528 U.S. 985, 120 S.Ct. 444, 145 L.Ed.2d 362 (1999). The erroneous excusing of a venire member under Article 35.16(b)(3) will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury. *Jones v. State*, supra at 394; see TEX. R.APP.P. 44.2(b). The purpose of challenges for cause is to remove jurors who are not qualified. *Ford v. State*, 73 S.W.3d 923, 925 (Tex.Cr.App.2002). There is no right to have a particular person on the jury; challenges for cause should be liberally granted. *Ford v. State*, supra at 925; *Jones v. State*, supra at 393–94.

Appellant must show error and the record must demonstrate harm. We need not determine whether the trial court erred in excluding the three venire members. Resolution of the issue need go no further than an examination of the lack of harm to appellant. Appellant stated that the trial court's action of granting the State's challenges left three objectionable jurors on the panel, but the record failed to identify which jurors were objectionable or demonstrate why the jury selected was not lawfully constituted; thus, there is no evi-

dence that the defendant was deprived of a lawfully constituted jury. Appellant's third, fourth, and fifth points of error are overruled.

## Speedy Trial

■ Appellant complains in his sixth point that his constitutional right to a speedy trial was violated. We disagree. A speedy trial analysis requires courts to use a balancing test in which the conduct of both the prosecution and the defendant are weighed. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors to be weighed in the balance include, but are not necessarily limited to, length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and the prejudice to the defendant resulting from the delay. *Barker v. Wingo*, supra at 516, 530, 92 S.Ct. 2182; *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex.Cr.App.2003); *Zamorano v. State*, 84 S.W.3d 643, 647–48 (Tex.Cr.App. 2002). We review the trial court's ruling with a bifurcated standard of review: an abuse of discretion standard for the factual components and a de novo standard for the legal components. *Zamorano v. State*, supra at 648.

■ The length of the delay between an initial charge and trial (or the defendant's demand for a speedy trial) acts as a "triggering mechanism." *Zamorano v. State*, supra at 648. Unless the delay is presumptively prejudicial, courts need not inquire into examining the other three factors. *Zamorano v. State*, supra. In general, courts deem delay approaching one year to be "unreasonable enough to trigger the *Barker* enquiry." *Dragoo v. State*, supra at 313–14 (quoting *Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). Here, appellant was arrested in June 2001, and tried on March 5, 2002, an interval of eight and one-half months. Under the facts of this case, the time period does not cross the threshold of being unreasonable enough to warrant a *Barker* enquiry.

■ Moreover, even weighing the factors, appellant cannot establish a constitutional violation. The time period from arrest to trial was just eight and one-half months. The initial trial setting was November 12, 2001, but was reset for trial on March 5, 2002, because of a crowded court docket. Appellant filed his motion for a speedy trial couched as a motion to dismiss in late December 2001, six months after arrest. At the hearing on the day of trial, the only evidence appellant offered was his testimony that he had lost contact with his witnesses. He did not name the witnesses. Appellant did not show any diligence in procuring the witnesses, nor did he explain why the witnesses were material to the case. *Harris v. State*, 489 S.W.2d 303, 308–09 (Tex.Cr.App.1973)(requiring appellant to show that the witnesses were unavailable, that their testimony might be material and relevant to the case, and that appellant exercised due diligence in his attempt to find them and produce them at trial). Appellant's sixth point is overruled.

## Motion to Suppress

In his seventh point of error, appellant complains that the trial court erred in denying his motion to suppress a gun and videotape seized during a traffic stop because the police had no reason for the stop. Officer Jeff Burge testified that he was assigned as part of the surveillance team on the vehicle believed to be used in the aggravated robbery. Officer Burge and his partner, Officer Taylor, were in a patrol car positioned a few blocks away from the house. Officer Burge was instructed by an undercover officer that a 1988 brown Cadillac was leaving the house at a high rate of speed. Officer Burge

said that they followed the Cadillac until it committed two traffic violations of failure to use a turn signal. TEX. TRANSP. CODE ANN. § 545.104(b) (Vernon 1999). When Officer Burge and Officer Taylor approached the car, they noticed appellant, who was in the front passenger seat, bend over. Appellant appeared to be retrieving or placing something under the front seat. Officer Burge had appellant step out of the car, then he checked under the front seat and found a surveillance tape from Phan's store. Officer Taylor meanwhile searched appellant and found a pistol in appellant's pocket. Appellant was not the owner of the car. The trial court first ruled that appellant did not have standing to complain about the videotape, then ruled that both items were admissible.

The historical facts are not disputed; therefore, we review the ruling on the motion to suppress de novo. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Cr.App.1999)(citing *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Cr.App.1997)).

■■■■ We first consider the legality of appellant's detention. Generally, a peace officer need not have probable cause to detain a person for investigation, but he must have a reasonable suspicion that criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Woods v. State,* 956 S.W.2d 33, 35 (Tex.Cr.App.1997); *Reynolds v. State,* 962 S.W.2d 307, 311 (Tex.App.-Houston [14th Dist.] 1998, pet'n ref'd). We must examine the reasonableness of a temporary detention in light of the totality of the circumstances. *Woods v. State,* supra at 38. An officer must have "specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts" would justify the detention. *Reynolds v. State,* supra at 311 (citing *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Cr.App.1983)). These facts

and experiences must create a reasonable suspicion in the officer's mind that some unusual activity is or has occurred, that the detained person is connected with the activity, and that the unusual activity is related to the commission of a crime. *Davis v. State,* 947 S.W.2d 240, 244 (Tex. Cr.App.1997). In determining whether the officer's suspicion was reasonable, we employ an objective standard: whether the facts available to the officer at the moment of detention warrant a person of reasonable caution to believe that the action taken was appropriate. *Terry v. Ohio,* supra at 21–22, 88 S.Ct. 1868; *Hernandez v. State,* 983 S.W.2d 867, 869 (Tex.App.-Austin 1998, pet'n ref'd)(quoting *Davis v. State,* supra at 243).

■■■■ It is well settled that a detention is justified when a person commits a traffic violation in an officer's presence. *McVickers v. State,* 874 S.W.2d 662, 664 (Tex.Cr.App.1993)(running a red light); *Garcia v. State,* 827 S.W.2d 937, 944 (Tex.Cr.App.1992)(running a stop sign); *Armitage v. State,* 637 S.W.2d 936, 939 (Tex.Cr.App.1982)(driving with a defective taillight). Here, the officers saw the driver commit two traffic violations. Section 545.104(b). The police could detain appellant. The officers thought that the two men inside the Cadillac had been involved in the robbery, and the officers were apprehensive about their safety. Based upon the totality of the circumstances, once Officer Burge saw appellant reaching under the seat to either place or retrieve an object, the officers were justified in performing a *Terry* search of both appellant and the passenger compartment of the car. *Woods v. State,* supra at 38–39. Appellant's seventh point is overruled.

*In–Court Identification*

■■■■ In his eighth point of error, appellant complains that an in-court identi-

fication was tainted by a prior photographic identification. An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification. *Loserth v. State,* 963 S.W.2d 770, 771–72 (Tex.Cr.App.1998). Determining the admissibility of an in-court identification that is challenged by a defendant requires a two-step analysis. First, we consider whether the pretrial identification procedure was impermissibly suggestive. *Barley v. State,* 906 S.W.2d 27, 33 (Tex.Cr.App.1995), *cert. den'd,* 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996). Second, if the procedure was impermissibly suggestive, we determine whether the procedure gave rise to a very substantial likelihood of irreparable misidentification. *Barley v. State,* supra at 33. The defendant bears the burden to prove these two elements by clear and convincing evidence. *Barley v. State,* supra at 34. If the totality of the circumstances reveals no substantial likelihood of misidentification despite an impermissibly suggestive pretrial procedure, the in-court identification testimony will be deemed reliable. *Loserth v. State,* supra at 772.

■ Whether the trial court erred in admitting into evidence a witness's identification of the accused involves a mixed question of law and fact. *Loserth v. State,* supra at 772–73. We extend great deference to the trial court's resolution of the historical facts pertinent to the case. *Loserth v. State,* supra at 773. However, the consequences arising from those historical facts are reviewed de novo. *Loserth v. State,* supra at 773–74. Thus, under the applicable case law, we will conduct a de novo review of the trial court's decision to deny the motion to suppress the in-court identification which appellant claimed was based on an impermissibly suggestive lineup.

Lupian testified that she was leaving Phan's liquor store when she noticed four or five males get out of a two-door car and enter the store. Lupian testified that she had a feeling something bad was going to happen and wrote down the license plate of the car. She then heard some shots and moved her vehicle to the 7–Eleven. Detective Stephen David came to her place of employment on June 27, 2001, and showed her pictures of potential suspects. Lupian picked appellant's photograph out of the set and signed the back of the photograph. Lupian also picked out another picture of an additional suspect. Lupian testified further that Detective David made no suggestions of whom she should pick out and that he told her she was not required to pick a picture. Out of the presence of the jury, Lupian identified appellant as one of the men. She testified that her identification came from seeing appellant the day of the crime.

Detective David testified that he showed Lupian six pictures and that Lupian looked through the pictures and picked appellant out of the set. He further said that the five other pictures were of men of similar likeness to appellant. Detective David also stated that he told Lupian that the suspect may or may not be in the lineup; but he asked her to look through all the pictures and, if she saw the person, to point him out. Detective David said that Lupian picked out the third picture, which was of appellant.

The record does not support appellant's argument that the in-court identification was tainted by impermissibly suggestive out-of-court identifications. There is no evidence of any identification procedure which gave rise to a substantial likelihood of misidentification. Appellant's eighth point of error is overruled.

*Sufficiency of the Evidence*

Appellant contends in his first and second points of error that the evidence is legally and factually insufficient to support his conviction. In order to determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State,* 17 S.W.3d 664 (Tex.Cr.App.2000). In order to determine if the evidence is factually sufficient, we must review all of the evidence in a neutral light and determine whether the evidence supporting guilt is so weak as to render the conviction clearly wrong and manifestly unjust or whether the evidence supporting guilt, although adequate when taken alone, is so greatly outweighed by the overwhelming weight of contrary evidence as to render the conviction clearly wrong and manifestly unjust. *Vasquez v. State,* 67 S.W.3d 229, 236 (Tex.Cr.App.2002); *Goodman v. State,* 66 S.W.3d 283 (Tex.Cr.App.2001); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Cr.App.2000); *Cain v. State,* 958 S.W.2d 404 (Tex.Cr.App.1997); *Clewis v. State,* 922 S.W.2d 126 (Tex.Cr.App.1996).

A person commits aggravated robbery when the person, in the course of committing a theft, intentionally, knowingly, or recklessly: (1) causes serious bodily injury to another or (2) uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. §§ 29.02 & 29.03 (Vernon 2003). Phan testified that she owned a liquor store and that on June 22, 2001, she was working the cash register when she saw two black men · enter the store. One of the men shot her, injuring her so that she will never be able to walk again. She also testified that the men took money from the cash register

without her consent. Phan was not able to identify appellant from a picture lineup but did identify him in open court. A store employee, Griffin, was shot in the wrist and testified that four black men entered the store. Griffin identified appellant as one of the men. Griffin testified that appellant looked like the same man who had come into the store earlier and asked him about the cost of beer. Lupian, who was leaving the store, noticed four black men get out of a green, two-door Eclipse. She was able to identify appellant as one of the men getting · out of the car from both a picture lineup and an in-court identification. The police found appellant's palm print on the inside of the front door of Phan's store. When they performed a *Terry* search on appellant during a traffic stop, the police found a surveillance tape from the liquor store underneath appellant's seat and a gun in appellant's pocket. A ballistics test determined that this gun was used in the robbery.

Officer Burge testified that, when he walked up to the car after the traffic stop, appellant "put his hands up in the air, and he said, 'You got me, you got me, it's over.'" The surveillance tape showed that there were four suspects. One of the men in the videotape wore shorts that appeared to be the same shorts appellant was wearing when arrested. The man on the videotape was carrying a gun in the same pocket that the gun on appellant was found. The pictures on the videotape were too blurry to recognize facial appearances, but clothing could be recognized. Kerry Lamont Woodfork, an accomplice, testified that he, appellant, Christopher Bell, and Adrian Marshall committed the robbery and that appellant was the one who shot Phan. Woodfork also identified everyone in the videotape and explained what they were doing at the time.

When the evidence is viewed in the light most favorable to the verdict, a rational trier of fact could have found the essential elements beyond a reasonable doubt. The evidence is legally sufficient. Appellant's first point of error is overruled.

The evidence is also factually sufficient to support appellant's conviction. Appellant testified during the guilt/innocence phase and stated that: the palm print did not match his; he was not present at the robbery; Woodfork was protecting another party by accusing appellant; though he did possess the gun, he was only trying to sell the gun; he did not know the gun had been used previously that day in a robbery; and he was either waiting for Bell to pick him up or they were riding around in Bell's brown Cadillac when the robbery occurred.

The evidence shows two different versions of events. The first was presented by the State, supported by multiple witnesses and physical evidence, and showed that appellant participated in the robbery; and the second view was presented by appellant's testimony. The fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Cr.App.1992). The fact finder may choose to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Cr.App.1986), *cert. den'd*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). When the evidence is viewed in a neutral light, the evidence supporting guilt is neither manifestly unjust nor against the great weight of the evidence. Appellant's second point is overruled.

### Extraneous Offense

▆ In his ninth point of error, appellant claims that, during the punishment phase, the State failed to prove beyond a reasonable doubt an extraneous offense of robbery or aggravated robbery because no testimony from a complainant was offered by the State. We disagree. During the punishment phase, Deputy Richard Hamb testified that he compared appellant's fingerprints to the fingerprints in the penitentiary packet and determined that they belonged to the same person. Deputy Hamb then testified that appellant was sent to prison for robbery. Pen packets are permissible evidence to show a defendant's prior record. *Rogers v. State*, 991 S.W.2d 263, 265 (Tex.Cr.App.1999); *Beck v. State*, 719 S.W.2d 205, 209 (Tex.Cr.App. 1986). Moreover, appellant admitted both in the guilt/innocence phase and in the punishment phase that he had been previously convicted of robbery. Appellant's ninth point is overruled.

### This Court's Ruling

The judgment of the trial court is affirmed.