IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00298-CV

 

Wesley Carl Retherford, Jr., d/b/a 

Whole House Inspection Company,

                                                                                    Appellant

 v.

 

Frank Castro and Terri Castro,

                                                                                    Appellees

 

 



From the County Court
at Law

Coryell County, Texas

Trial Court No. 09-8860

 



ORDER of referral to mediation










 

            The Legislature has provided
for the resolution of disputes through alternative dispute resolution (ADR)
procedures.  See Tex. Civ. Prac.
& Rem. Code Ann. §§ 154.001-154.073 (West 2005).  The
policy behind ADR is stated in the statute: “It is the policy of this state to
encourage the peaceable resolution of disputes . . . and the early settlement
of pending litigation through voluntary settlement procedures.”  Id. §
154.002 (West 2005).  Mediation is a form of ADR.  Mediation is a mandatory but
non-binding settlement conference, conducted with the assistance of a
mediator.  Mediation is private, confidential, and privileged.

            We find that this appeal is
appropriate for mediation.  See id. § 154.021(a) (West 2005); 10th Tex. App. (Waco) Loc. R. 9.

            The parties are ordered to
confer and attempt to agree upon a mediator.  Within fourteen days after the
date of this Order, Wesley Retherford is ordered to file a notice with the
Clerk of this Court which either identifies the agreed-upon mediator or states
that the parties are unable to agree upon a mediator.  If the notice states
that the parties are unable to agree upon a mediator, this Court will assign a
mediator.

            Mediation must occur within
thirty days after the date the above-referenced notice agreeing to a mediator
is filed or, if no mediator is agreed upon, within thirty days after the date
of the order assigning a mediator.

            No less than seven calendar
days before the first scheduled mediation session, each party must provide the
mediator and all other parties with an information sheet setting forth the
party’s positions about the issues that need to be resolved.  At or before the
first session, all parties must produce all information necessary for the
mediator to understand the issues presented.  The mediator may require any
party to supplement the information required by this Order.

            Named parties must be
present during the entire mediation process.

            Immediately after mediation,
the mediator must advise this Court, in writing, only that the case did or did
not settle and the amount of the mediator’s fee paid by each party.  The
mediator’s fees will be taxed as costs.  Unless the mediator agrees to mediate
without fee, the mediator must negotiate a reasonable fee with the parties, and
the parties must each pay one-half of the agreed-upon fee directly to the
mediator.

            Failure or refusal to attend
the mediation as scheduled may result in the imposition of sanctions, as
permitted by law.  

            Any objection to this Order
must be filed with this Court and served upon all parties within ten days after
the date of this Order, or it is waived. 

            We refer this appeal to
mediation.  

            The appeal and all appellate
deadlines are suspended as of the date of this Order.  The suspension of the
appeal is automatically lifted when the mediator’s report to the Court is
received.  If the matter is not resolved at mediation, any deadline that began
to run and had not expired by the date of this Order will begin anew as of the
date the mediator’s report to the Court is received.  Any document filed by a
party after the date of this Order and prior to the filing of the mediator’s
report will be deemed filed on the same day, but after, the mediator’s report
is received.

 

PER
CURIAM

Before
Chief Justice Gray,

        Justice
Davis, and

        Justice
Scoggins

Order
issued and filed January 12, 2011

Do
not publish






t then establish that the search or seizure was conducted with
a warrant or was reasonable.  Id.

We review a trial court’s ruling on a motion to
suppress under a bifurcated standard of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  A trial court’s denial of a motion to suppress is
reviewed for abuse of discretion.  Oles v. State, 993 S.W.2d 103, 106
(Tex. Crim. App. 1999).  The trial court’s findings of fact are given “almost
total deference,” and in the absence of explicit findings, the appellate court
assumes the trial court made whatever appropriate implicit findings that are
supported by the record.  Carmouche, 10 S.W.3d at 327-28; Guzman,
955 S.W.2d at 89-90.  But when the trial court's rulings do not turn on the
credibility and demeanor of the witnesses, we review de novo a trial court's
rulings on mixed questions of law and fact.  Estrada v. State, 154
S.W.3d 604, 607 (Tex. Crim. App. 2005).  Therefore, although due weight should
be given to the inferences drawn by trial judges and law enforcement officers,
determinations of matters such as reasonable suspicion and probable cause are
reviewed de novo on appeal.  Guzman, 955 S.W.2d at 87.

Applicable Law

In this case, Green does not challenge Abrego’s
initial traffic stop.  In what is know as a Terry stop or an
investigative detention, an officer may stop and briefly detain a person suspected
of criminal activity on less information than is constitutionally required for
probable cause to arrest.  Terry v. Ohio, 329 U.S. 1, 22, 88 S.Ct. 1868,
1880, 20 L.Ed.2d 889 (1968); Walter v. State, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000).  Routine traffic stops are more analogous to investigative detentions
than custodial arrests and are thus analyzed as Terry stops.  Berkemer
v. McCarty, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 318 (1984). 
An investigative detention—either as a part of, or apart from, a traffic
stop—is a seizure for Fourth Amendment purposes.  See Francis v. State,
922 S.W.2d 176, 178 (Tex. Crim. App. 1996).  Therefore, a traffic stop and any
concomitant investigative detention must be reasonable under the United States and Texas Constitutions.  See U.S.
Const. amend. IV; Tex. Const.
art. I, § 9.

An investigative detention is reasonable, and thus
constitutional, if (1) the officer’s action was justified at the detention’s
inception, and (2) the detention was reasonably related in scope to the
circumstances that justified the interference in the first place.  Terry,
329 U.S. at 19-20, 88 S.Ct. at 1879.  For the officer’s initial action to be
justified under the first Terry prong, we ask whether there existed
specific, articulable facts that, taken together with rational inferences from
those facts, reasonably warranted that intrusion.  Id. at 21, 88 S.Ct.
at 1880; see also Davis v. State, 947 S.W.2d 240, 242 (Tex. Crim. App.
1997).  Specifically, the officer must have a reasonable suspicion that some
activity out of the ordinary is occurring or has occurred, some suggestion to
connect the detainee with the unusual activity, and some indication that the
unusual activity is related to crime.  See Davis, 947 S.W.2d at 244.

In other words, “an officer conducts a lawful
temporary investigative detention when the officer has reasonable suspicion to
believe that an individual is violating the law.”  Ford, 158 S.W.3d at
492.  “Reasonable suspicion exists if the officer has specific, articulable
facts that, when combined with rational inferences from those facts, would lead
him to reasonably conclude that a particular person actually is, has been, or
soon will be engaged in criminal activity.”  Id.  We give due weight not
to the officer's inchoate and unparticularized suspicion or "hunch,"
but to the specific reasonable inferences that he is entitled to draw from the
facts in light of his experience.  See Davis, 947 S.W.2d at
243 n.3.  An investigative detention that is not based on reasonable suspicion
is unreasonable and thus violates the Fourth Amendment.  Id.

Under the second Terry prong, an
investigative detention must be temporary and last no longer than is necessary
to effectuate the purpose of the stop.  See Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983).  Once the reason for the stop
has been satisfied, the stop may not be used as a “fishing expedition for
unrelated criminal activity.”  Davis, 947 S.W.2d at 243 (quoting Ohio
v. Robinette, 519 U.S. 33, 41, 117 S.Ct. 417, 422, 136 L.Ed.2d 347 (1996)
(Ginsberg, J., concurring)).  Also, the scope of the seizure must be restricted
to that necessary to fulfill the seizure’s purpose.  Royer, 460 U.S. at 500, 103 S.Ct. at 1325.

Once the traffic stop investigation is concluded,
the officer must no longer detain the driver, who must be permitted to leave.  Kothe,
152 S.W.3d at 63-64; see Perales v. State, 117 S.W.3d 434, 439 (Tex.
App.—Corpus Christi 2003, pet. ref’d). . . .

 

If, during a valid traffic stop and detention, the
officer develops reasonable suspicion that the detainee is engaged in criminal
activity, prolonged or continued detention is justified.  See Davis,
947 S.W.2d at 244; Perales, 117 S.W.3d at 439.  Additional facts and
information discovered by an officer during a lawful detention may form the
basis for a reasonable suspicion that another offense has been or is being
committed.  See Razo v. State, 577 S.W.2d 709, 711 (Tex. Crim. App.
[Panel Op.] 1979); Powell, 5 S.W.3d at 378-79; Mohmed, 977 S.W.2d
at 628.  Articulable facts coming to the officer’s knowledge during the proper
stop or detention may justify further investigation.  Razo, 577 S.W.2d
at 711; Mohmed, 977 S.W.2d at 628.  More specifically, if the valid
traffic stop evolves into an investigative detention of other criminal activity
(such as transporting illegal drugs) so that a canine sniff can take place,
reasonable suspicion is required to prolong the detention.  Wolf, 137
S.W.3d at 802; Hill v. State, 135 S.W.3d 267, 269 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d); Sims v. State, 98 S.W.3d 292, 295 (Tex.
App.—Houston [1st Dist.] 2003, pet. ref’d); McQuarters v. State, 58
S.W.3d 250, 256-57 (Tex. App.—Fort Worth 2001, pet. ref’d).








 

Haas v. State, 172 S.W.3d 42, 52-53 (Tex. App.—Waco 2005, pet. ref’d).

On appeal, we review the reasonableness of the
detention from the same perspective as the officer:  using an objective
standard, we ask whether the facts available at the moment of detention would
warrant a person of reasonable caution in the belief that the action taken was
appropriate.  See Terry, 392 U.S. at 21-22, 88 S.Ct. at 1880; Davis,
947 S.W.2d at 243.  The determination of reasonable suspicion is made by
considering the totality of the circumstances.  Ford, 158 S.W.3d at
492-93.

 

Continued Detention

Green argues that nervousness and his being near a
known drug house did not warrant continued detention.  Nervousness alone does
not warrant reasonable suspicion.  See Davis, 947 S.W.2d at 248 (“It is
not indicative of guilt for a person to be nervous when confronted by police
officers asking questions.”).  In Haas, we said:

“Extreme nervousness has traditionally been a fact
that law enforcement has used in its list of elements leading up to either
reasonable suspicion or probable cause.”  Veal, 28 S.W.3d at 837 (citing
Sokolow, 490 U.S. at 3, 109 S.Ct. at 1583).  “[N]ervous, evasive
behavior is a pertinent factor in determining reasonable suspicion.”  Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570
(2000).  But nervousness alone is not sufficient to be a factor giving rise to
reasonable suspicion.  LeBlanc v. State, 138 S.W.3d 603, 608 n. 6 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

 

Haas,
172 S.W.3d at 54 n.7.  Nor can mere presence in a high-crime area serve as the
sole basis for a Terry stop.  Gurrola v. State, 877 S.W.2d 300,
303 (Tex. Crim. App. 1997).

But considering the totality of the circumstances,
we disagree with Green that Abrego’s continued detention was unreasonable.  Abrego
articulated the following specific, articulable facts that Green was engaged in
criminal activity:  Green had stopped in front of a known drug house, with
someone walking from Green’s truck back to the house; Green had gotten out of and
away from his truck when he was pulled over and was walking toward Abrego’s
car, and he initially did not comply with Abrego’s order to return to his
truck; and Green’s nervousness and nervous glances at his truck.  Under the
totality of the circumstances, the trial court did not err in implicitly
determining that Abrego had reasonable suspicion to continue to detain Green
after the purpose of the traffic stop had been satisfied.  See Haas, 172
S.W.3d at 53-54.

Consent to Search

Green next challenges the voluntariness of the alleged
consensual search that led to Abrego’s discovery of the controlled substance
because of Abrego’s statement to Green that he did not need his consent because
he was going to search Green’s truck anyway.

One of the established exceptions to both the
requirements of a warrant and probable cause is a search conducted pursuant to
consent.  Corea v. State, 52 S.W.3d 311, 315-16 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973)).  The State can establish the
lawfulness of an illegal search through bearing the burden of proving, by clear
and convincing evidence, that consent was freely and voluntarily given.  Id. at 316 (citing Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct.
1788, 1791, 20 L.Ed.2d 797 (1968)).  Hence, the State must show that the
consent was positive and unequivocal and not merely an acquiescence to a claim
of lawful authority.   

 

Grubbs
v. State, 177 S.W.3d 313, 317-18
(Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).

 

            In this case, the State concedes that
Abrego did not have valid consent:  “in this case the officer did not have
valid consent as he implied by his statement ‘I don’t need your consent to
search’ that the defendant had no right to resist the search.”  (State’s Brief
at 8).  We agree.  The State contends, however, that the search was not illegal
for two reasons:  (1) officer safety, and (2) probable cause existed.

            Vehicle Frisk

The State first posits that Abrego could conduct a
“vehicle frisk” for his own safety.  A weapons search is
not authorized in all confrontational situations.  See Carmouche, 10
S.W.3d at 329 (a weapons search is “only justified where the officer can point
to specific and articulable facts which reasonably lead him to conclude that
the suspect might possess a weapon”).

A police officer who has lawfully detained a
person for investigation of suspected criminal activity may conduct a limited
search for weapons only if the circumstances give the officer reason to believe
that the person detained is armed and dangerous.  See Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Spillman v. State,
824 S.W.2d 806, 811 (Tex. App.—Austin 1992, pet. ref’d).  Under some circumstances,
this right to conduct a protective frisk may also extend to the passenger
compartment of the detainee’s automobile.

 

[T]he search of the passenger compartment of an
automobile, limited to those areas in which a weapon may be placed or hidden,
is permissible if the police officer possesses a reasonable belief based on “specific
and articulable facts which, taken together with the rational inferences from those
facts, reasonably warrant” the officer in believing that the suspect is
dangerous and the suspect may gain immediate control of weapons.

 

Michigan v. Long, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d
1201 (1983) (quoting Terry, 392 U.S. at 21, 88 S.Ct. 1868).  A police
officer may not search an automobile for weapons whenever the officer effects
an investigative stop, but may do so only if the officer possesses the level of
suspicion identified in Terry.  See id. n. 14, 88 S.Ct. 1868.

 

A police officer’s authority to search for weapons
in the absence of probable cause is narrowly drawn, even when the officer
reasonably suspects criminal activity.  See Terry, 392 U.S. at 27, 88 S.Ct. 1868.  In determining whether an officer acted reasonably in a particular case,
due weight must be given, not to the officer’s inchoate and unparticularized
suspicion or hunch, but to the specific reasonable inferences which the officer
is entitled to draw from the facts in light of experience.  See id.

 

Horton v. State, 16 S.W.3d 848, 852-53 (Tex. App.—Austin 2000, no pet.).

            In this case, Abrego offered the
following reasons for his search of the passenger compartment of Green’s truck
for the officer’s own safety:  when Abrego pulled him over, Green got out of
and away from his truck and walked toward Abrego’s car, and he initially did
not comply with Abrego’s order to return to his truck; and Green was nervous
and made nervous glances toward at his truck.  Yet despite this alleged safety
concern, Abrego ordered Green back into his truck.  Abrego admitted that this
would have given Green access to a gun if one were in his truck.

Abrego’s reasons for a “vehicle frisk,” coupled
with his inconsistent and counterintuitive action in ordering Green back into
the truck—where he would have access to the very weapon that allegedly serves
as the basis for Abrego’s concerns about his own safety—result in our
conclusion that he did not possesses a reasonable belief based on specific and
articulable facts that, taken together with the rational inferences from those
facts, reasonably warrant him in believing that Green was dangerous and had in
his truck a weapon that he could gain immediate control of.  See Long,
463 U.S. at 1049, 103 S.Ct. at 3480; State v.
Thirty Thousand Six Hundred Sixty Dollars and no/100, 136 S.W.3d 392, 402-03 (Tex. App.—Corpus Christi 2004,
pet. denied); Horton, 16 S.W.3d at 853-54; cf. Ramsey v.
State, 806 S.W.2d 954, 958 (Tex. App.—Austin 1991, pet. ref’d) (holding
that officer had specific and articulable facts warranting reasonable belief
that defendant posed danger if he were permitted to reenter his car
because defendant had tried to hide shaving kit from officer, and that officer
acted reasonably in taking preventive measures to ensure there were no weapons
within defendant’s grasp before allowing him to return to car); cf.
also Tasby v. State, 111 S.W.3d 178 (Tex. App.—Eastland 2003, no pet.) (finding
officers justified in searching car’s compartment because they thought car’s
occupants had been involved in robbery and one officer saw defendant reach
under seat to either place or retrieve an object).  Abrego’s “vehicle frisk”
for his own safety was illegal.

Probable Cause for Warrantless Search

The State final contention is that
Abrego had probable cause to conduct a warrantless search of Green’s truck for
drugs.

Under both state and federal law, a police officer
may conduct a warrantless search of an automobile if he or she has probable
cause to believe a crime has been committed and there is contraband located
somewhere inside the vehicle.  Carroll v. United States, 267 U.S. 132, 158-59, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925); Wiede v. State, 214 S.W.3d
17, 24 (Tex. Crim. App. 2007).  The justifications for this automobile
exception are that vehicles are inherently mobile and the expectation of
privacy with respect to an automobile is relatively low.  Id.  Furthermore,
the justification to conduct a warrantless search does not vanish once the
vehicle is immobilized.  See Michigan v. Thomas, 458 U.S. 259, 261, 102 S.Ct. 3079, 3081, 73 L.Ed.2d 750 (1982); State v. Guzman, 959 S.W.2d 631,
634 n.3 (Tex. Crim. App. 1998).  Accordingly, a vehicle may be searched on the
basis of probable cause to believe that it contains contraband although exigent
circumstances do not exist to justify such a warrantless search.  Id.; Dixon v. State, 206 S.W.3d 613, 619 n.25 (Tex. Crim. App. 2006)
(“A finding of probable cause ‘alone satisfies the automobile exception to the
Fourth Amendment warrant requirement.’”).

 

In determining probable cause, courts must
consider the totality of the circumstances.  Illinois v. Gates,
462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).  Probable cause
exists when the facts and circumstances within the officer’s knowledge and
about which he has [reasonably] trustworthy information are sufficient in
themselves to warrant a person of reasonable caution to believe that a crime
has been committed.  Torres v. State, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005).  The sum of the information known to the cooperating officers at the
time of a search is to be considered in determining whether there was
sufficient probable cause.  Woodward v. State, 668 S.W.2d 337, 344 (Tex.
Crim. App. 1982).

 

Curry v. State, 228 S.W.3d 292, 295 (Tex. App.—Waco 2007, pet. ref’d).

Abrego articulated the following as reasons why he
had probable cause to search Green’s truck:  stopping in front of a known drug
house, with someone walking from Green’s truck; getting out of and away from
his truck when he was pulled over and walking toward Abrego’s car, and
initially not complying with Abrego’s order to return to his truck; and
nervousness and nervously looking at his truck.  Based on his training and
experience—including his prior stop of a vehicle after it had just left the
same house and the driver possessed crack—and knowledge from other officers
about the house, Abrego believed that a drug buy had just happened and that
drugs would be found in Green’s truck.

Under the totality of the circumstances,
the officer had probable cause to search Green’s truck.  See Curry, 228
S.W.3d at 295.  Accordingly, the trial court did not err in denying the motion
to suppress.

We overrule Green’s sole issue and affirm the
trial court’s judgment.

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray concurs in the judgment.  He
does not join any part of the opinion.  A separate opinion will not be issued. 
He notes, however, that the entire discussion of the “Vehicle Frisk” is
unnecessary to the decision and is, therefore, worthless dicta.)

Affirmed

Opinion
delivered and filed April 23, 2008

Publish

[CR25]