**Opinion filed September 3, 2020**



# In The

# Eleventh Court of Appeals

_____

## No. 11-18-00247-CR

_____

## ROBERTO LUJAN JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR51096**

## M E M O R A N D U M   O P I N I O N

The jury found Roberto Lujan Jr. guilty of assault family violence by impeding breath or blood, a third-degree felony offense. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (West Supp. 2019); TEX. FAM. CODE ANN. § 71.0021(b) (West 2019). During the punishment phase of trial, Appellant pleaded not true to two prior felony convictions alleged for enhancement purposes. The jury subsequently found that Appellant had previously been convicted of the following felony offenses:

(1) felon in possession of a firearm, a federal felony offense, and (2) possession of a controlled substance in an amount of at least four grams but less than 200 grams, a state felony. The jury assessed Appellant's punishment at confinement for a period of forty years in the Institutional Division of the Texas Department of Criminal Justice.

Appellant presents two issues on appeal. In his first issue, Appellant challenges the sufficiency of the evidence to support the jury's finding of "true" to the prior federal conviction. He alleges in his second issue that the trial court violated his right to a speedy trial. We affirm.

*Background Facts*

The underlying facts of the guilt/innocence phase of trial are unnecessary for the disposition of this appeal. Accordingly, we only summarily note them here. Asucena Salcido and Appellant were dating, and Appellant sometimes stayed at Salcido's apartment in Midland. During the evening of October 6, 2017, Salcido became upset when Appellant declined to answer his ringing phone while she attempted to rest after work.

Salcido began to place Appellant's clothing in a garbage bag and told him that she wanted him to leave. When Salcido turned around, Appellant told her that she was going to die, pinned her down on the bed, began strangling her with both hands, and then completely covered her face with the garbage bag so that she was unable to breathe. Salcido testified that she believed she would die and that she fought against Appellant until they fell off the bed. After Salcido screamed for help, Appellant placed a pillow over her face and told her to calm down. Salcido struggled free and was able to reach her phone. Although Appellant attempted to take the phone from Salcido, she was able to successfully dial 9-1-1 for assistance.

*Analysis*

In his first issue, Appellant challenges the sufficiency of the evidence to support the jury's finding that Appellant previously had been convicted on a federal charge of being a felon in possession of a firearm. "[W]hen the State seeks to enhance a defendant's sentence for the primary offense by alleging that a defendant has a prior conviction, and the defendant enters a plea of not true, the factfinder must decide whether the State has sustained its burden by entering a finding that the enhancement allegation is either true or not true." *Jordan v. State*, 256 S.W.3d 286, 291 (Tex. Crim. App. 2008) (footnotes omitted). In making this determination, "the factfinder engages in a deductive, discrete fact-finding process to determine whether the State has proved that the enhancement allegation is true." *Id.* at 292. A defendant may challenge the sufficiency of the evidence supporting the jury's finding of true. *Id.* If the State's evidence fails to show that an enhancement allegation is true, the Double Jeopardy Clause does not bar the use of the enhancement conviction during a retrial on punishment. *Id.* (citing *Monge v. California*, 524 U.S. 721, 734 (1998)).

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

To establish that the defendant has been convicted of a prior offense for enhancement purposes, the State is required to prove beyond a reasonable doubt that a prior conviction exists and that the defendant is linked to that conviction.

3

*Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). There is no specific manner in which the State must prove these two elements. *Id.* at 922. A certified copy of a judgment and sentence are admissible even when the State has not yet linked the defendant to the judgment and sentence through independent evidence. *Beck v. State*, 719 S.W.2d 205, 210–11 (Tex. Crim. App. 1986). Without more, however, the certified judgment and sentence are insufficient to prove the prior conviction even if the name is the same as that of the defendant at trial. *Id.* at 210. A defendant may be linked to a prior conviction through the testimony of a witness who personally knows that the defendant was previously convicted and who can identify the defendant. *See, e.g.*, *Beck*, 719 S.W.2d at 209 (citing *Ward v. State*, 505 S.W.2d 832, 837 (Tex. Crim. App. 1974) (explaining that signed order of conviction and testimony of county attorney who was present at the prior trial were sufficient to prove the defendant's prior conviction)); *Littles v. State*, 726 S.W.2d 26, 31–32 (Tex. Crim. App. 1984).

The State offered into evidence a certified copy of the federal court's judgment of conviction signed on March 1, 2012, which was founded upon the defendant's December 6, 2011 plea of guilty to having committed the offense of being a "Convicted Felon in Possession of a Firearm" in violation of 18 U.S.C. § 922(g)(1). The federal judgment does not bear the fingerprints, photograph, signature, or date of birth of the named federal defendant, "Roberto Franco Lujan, Jr." The trial court admitted the certified federal judgment over Appellant's objections that the judgment was not relevant and was hearsay, testimonial, and needed to be proved by a court clerk to satisfy Appellant's Confrontation Clause rights.

The State attempted to link the 2012 federal conviction to Appellant through Salcido's testimony. Over defense counsel's objection, the trial court permitted the State to recall Salcido to testify during the punishment phase. Salcido testified that

she had known Appellant for fourteen years and had been staying with him at his apartment in 2012, the year of the federal conviction. Salcido testified that Appellant was on federal probation at the time of trial and that it arose from his 2012 federal conviction for a felon being in possession of a firearm. She also testified that Appellant went to federal prison for the conviction; Appellant had confirmed this fact to her and had written to her from a federal facility in Three Rivers. Salcido confirmed that the person she had identified in court as Roberto Lujan Jr. was the same "Roberto Franco Lujan, Jr." who had the 2012 federal conviction.

Under cross-examination, Salcido stated that she was certain that Appellant had been convicted in 2012 but admitted that she did not know when or on what day he had been convicted because she did not "follow through," "wasn't there for him," and had not been present at any of Appellant's proceedings to hear anyone announce that Appellant had been convicted. She knew that Appellant had written to her from a federal facility because the envelope bore a stamp of "Three Rivers," but she acknowledged that mail fraud does occur. Although Salcido visited Appellant while he was detained in the Ector County Detention Center, she did not subsequently travel to visit Appellant in a federal prison and admitted that she could not verify for the jury that Appellant had been to a federal prison facility. She admitted that she is unaware of the different types of jurisdictions. Under redirect examination, Salcido explained that the envelope that contained the letter that Appellant sent to her was marked "federal correctional institution" in black ink.

Appellant asserts that the evidence was insufficient to support the jury's "true" finding as to the federal-conviction enhancement allegation. We disagree. The State established through Salcido's testimony that Appellant was the same person previously convicted in federal court for the offense of being a felon in possession of a firearm in 2012. Salcido had known Appellant for fourteen years and had dated him periodically during that period, had been living with him when he was arrested

5

for the federal charge, had visited him in the county detention facility before he began serving his prison sentence on that charge, had been informed directly by Appellant that he had been convicted for the offense of being a felon in possession of a firearm, had received correspondence from Appellant marked "federal correctional institution," and otherwise demonstrated personal knowledge of Appellant's identity and his criminal history. *See Davis v. State*, 268 S.W.3d 683, 717 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Beck*, 719 S.W.2d at 209). Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant was the person convicted on the 2012 federal charge of "Convicted Felon in Possession of a Firearm." *See Jackson*, 443 U.S. at 319. We overrule Appellant's first issue.

In his second issue, Appellant asserts that his right to a speedy trial pursuant to the Sixth Amendment of the U.S. Constitution and Article I, section 10 of the Texas Constitution was violated. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI; *see also Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (recognizing that the right to a speedy trial is made applicable to state criminal prosecutions by the Due Process Clause of the Fourteenth Amendment). Article I, section 10 of the Texas Constitution also guarantees the accused in all criminal prosecutions the right to a speedy and public trial. *Smith v. State*, 436 S.W.3d 353, 363 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002)).

Courts determine a speedy trial claim on an "ad hoc basis" by analyzing and weighing four factors: (1) the length of the delay, (2) the State's reason for the delay,

(3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Gonzales*, 435 S.W.3d at 808. The State has the burden to justify the length of the delay, while the defendant has the burden to prove he asserted his right and is prejudiced. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). The defendant's burden on the latter two factors "varies inversely" with the State's degree of culpability for the delay. *Id.* (quoting *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). When conducting the balancing test, no single factor is determinative, and the conduct of both the prosecutor and the defendant must be weighed. *Barker*, 407 U.S. at 530, 533; *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

To trigger a speedy trial analysis, the defendant must make an initial showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Gonzales*, 435 S.W.3d at 808 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). If the defendant makes a threshold showing of presumptive prejudice, the court must consider and weigh each of the remaining *Barker* factors. *Id.* (citing *Munoz*, 991 S.W.2d at 821–22). If the right to a speedy trial has been violated, the remedy is dismissal of the charging instrument with prejudice. *Cantu*, 253 S.W.3d at 281. Because this is an extreme remedy, "courts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.*

When reviewing the trial court's ruling on a speedy trial claim, we apply a bifurcated standard of review. *Cantu*, 253 S.W.3d at 282 (citing *Zamorano*, 84 S.W.3d at 648); *see also Gonzales*, 435 S.W.3d at 808. We presume the trial judge

7

resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports. *Cantu*, 253 S.W.3d at 282. We review legal questions de novo to determine whether there was sufficient presumptive prejudice to proceed to a *Barker* analysis. *Gonzales*, 435 S.W.3d at 809. We must uphold the trial court's ruling if it is supported by the record and is correct under the applicable law. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

"The delay in speedy trial claims is measured from the time the defendant is formally accused or arrested." *Floyd v. State*, 959 S.W.2d 706, 710 (Tex. App.—Fort Worth 1998, no pet.). Midland Police Officer Arturo Garcia testified that he was dispatched to Salcido's apartment on October 6, 2017. After he had interviewed Salcido, Garcia looked for and found Appellant. After making further inquiries of Salcido, Garcia arrested Appellant. Appellant was indicted for the charged offense on February 21, 2018.

Appellant sought to have his initial trial date of June 11, 2018, reset to an earlier date, subject to the State's calendar. In this regard, Appellant's trial counsel advised the trial court that Appellant "has a marshal hold, so he cannot bond out." Due to scheduling conflicts, the trial court advised Appellant that it doubted that it could reset the trial to an earlier date, and in a subsequent pretrial hearing, the defense counsel confirmed that Appellant's case was the third case set "on a speedy trial docket" for June 11, 2018. The trial court subsequently granted the State's single motion for continuance. The State based the motion on the fact that Officer Garcia would be on vacation and unavailable to testify at the June setting.

Appellant's trial commenced less than two months later on August 6, 2018. Therefore, the interval from Appellant's indictment to the commencement of his trial was less than six months, and the interval from Appellant's arrest to his trial was ten months. Post-accusation delay that approaches one year "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett*,

8

505 U.S. at 652 n.1; *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016); *Tasby v. State*, 111 S.W.3d 178, 183 (Tex. App.—Eastland 2003, no pet.). We conclude that, under the facts of this case, the interval between accusation and trial in this case has not crossed the threshold of ordinary delay and is therefore not presumptively prejudicial. *See Doggett*, 505 U.S. at 651–52; *Gonzales*, 435 S.W.3d at 808; *Tasby*, 111 S.W.3d at 183 (an interval of eight and one-half months). Consequently, Appellant has failed to make an initial showing sufficient to trigger a speedy trial analysis, and we need not consider and weigh each of the remaining *Barker* factors. *Gonzales*, 435 S.W.3d at 808 (citing *Munoz*, 991 S.W.2d at 821–22).

Moreover, even considering the *Barker* factors, Appellant cannot establish a constitutional violation. The second *Barker* factor focuses on the reasons for the delay. *Barker*, 407 U.S. at 530. *Barker* assigns different weights to different reasons to justify the delay. *Id*. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* However, a more neutral reason should be weighted less heavily, but is still considered against the State since the ultimate responsibility for a speedy trial rests with the State. *Id.* "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* The State based its motion for continuance on the unavailability of Officer Garcia for the trial setting. The State asserted that it would be unable to present its prima facie case without Officer Garcia. Thus, the delay attributable to Officer Garcia's absence does not weigh against the State.

Regarding the third *Barker* factor, the defendant bears the responsibility to assert his right to a speedy trial. *Cantu*, 253 S.W.3d at 282. Whether and how a defendant chooses to assert his right "is closely related to the other three factors because the strength of his efforts will be shaped by them." *Id.* at 282–83. A defendant's failure to timely seek a speedy trial does not amount to a waiver of the

9

right.  *Shaw*, 117 S.W.3d at 890 (citing *Barker*, 407 U.S. at 532).  Here, Appellant did not seek continuances or a dismissal of the case.  Instead, he requested to proceed to trial.  Therefore, this factor weighs in favor of Appellant.  *See Barringer v. State*, 399 S.W.3d 593, 601–02 (Tex. App.—Eastland 2013, no pet.).

The last *Barker* factor to consider is prejudice to the defendant.  "Because 'pretrial delay is often both inevitable and wholly justifiable,'" this factor "examines whether and to what extent the delay has prejudiced the defendant."  *Cantu*, 253 S.W.3d at 285 (quoting *Doggett*, 505 U.S. at 656).  The prejudice must be assessed in light of the interests that the speedy trial right is meant to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired.  *Id.*; *see also Barker*, 407 U.S. at 532.  Of these three interests, the possibility that the defense will be impaired by dimming memories and the loss of exculpatory evidence is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  *Barker*, 407 U.S. at 532; *see also Doggett*, 505 U.S. at 654; *Gonzales*, 435 S.W.3d at 812.

The defendant has the burden to make some showing of prejudice, although a showing of actual prejudice is not required.  *Munoz*, 991 S.W.2d at 826; *State v. Smith*, 76 S.W.3d 541, 551 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).  When the defendant makes a prima facie showing of prejudice, the burden shifts to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay."  *Munoz*, 991 S.W.2d at 826; *Smith,* 76 S.W.3d at 551.

On appeal, Appellant does not assert any interest related to oppressive pretrial incarceration or to his anxiety and concern.  Rather, he asserts that his defense was impaired because Salcido's memory was diminished, and her recollection of events

had changed over time. He also asserts that Salcido's testimony differed from that of Officer Garcia.

A witness's fading or changing memory can constitute prejudice. *Barker*, 407 U.S. at 532, 534. However, "*Barker* requires a defendant to show that 'lapses of memory' are in some way 'significant to the outcome' of the case." *Munoz*, 991 S.W.2d at 829 (quoting *Barker*, 407 U.S. at 534). Appellant has not suggested nor shown that Salcido's alleged diminished memory was significant to the outcome of his case. Accordingly, this factor weighs against the finding of a violation of Appellant's right to a speedy trial.

Balanced together, the four *Barker* factors weigh against a finding that Appellant's right to a speedy trial was violated. *See Barker*, 407 U.S. at 534; *Shaw*, 117 S.W.3d at 891. We overrule Appellant's second issue.

### *This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

September 3, 2020

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.