COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-12-00206-CR |
| Appellant, | § | Appeal from the |
| v. | § | 204th Judicial District Court |
| OSCAR HOWARD, | § | of Dallas County, Texas |
| Appellee. | § | (TC# F06-15879) |
| | § | |

## **O P I N I O N**

The State of Texas appeals from the trial court's order granting Oscar Howard's motion to dismiss for want of a speedy trial.   We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

While on parole for aggravated robbery in Louisiana, Howard was granted a temporary permit to travel to Texas as a displaced Hurricane Katrina refugee.   Howard, however, refused to return to Louisiana after his permit expired, prompting Louisiana authorities to issue a warrant for his arrest.   At some point, Howard took up residence in Dallas County, Texas, where he was arrested for attempted rape on March 27, 2006.   Howard was released on bond the next day, but was not formally charged for this offense until May 23, 2006.

Nearly three months after his arrest for attempted rape, Howard was arrested pursuant to the warrant from Louisiana and, ten days later, returned to the custody of Louisiana officials.

Sometime in September 2006, Texas prosecutors learned that Howard was in prison in Louisiana serving out the remainder of his sentence for aggravated robbery. When Howard's bond was revoked later that month, Texas authorities issued a warrant for his arrest. Prosecutors, however, waited until mid-February 2007 to place a detainer on Howard and, for reasons discussed below, never sought his return to face prosecution.

On January 19, 2012—approximately six years after Howard's arrest for attempted rape—the trial court received a letter from him claiming that he had discovered that this charge had not been resolved as he was led to believe when he was last in court in Dallas County. Howard requested that the charge be resolved, preferably before his March 25, 2012 release date from prison in Louisiana, and that he receive credit for time served. Following his release from prison in Louisiana, Howard was arrested pursuant to the Texas warrant and brought back to Dallas County to face prosecution. Approximately two months later, Howard moved to dismiss the attempted-rape charge based on speedy-trial grounds.

## SPEEDY TRIAL

The State argues the trial court erred in granting Howard's motion to dismiss based on his right to a speedy trial because the trial court incorrectly weighed the *Barker v. Wingo* factors. We disagree.

### *Applicable Law*

A criminal defendant has a constitutional right to a speedy trial, which attaches once he has been arrested or charged. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex.Crim.App. 2008); *see* U.S. CONST. VI AMEND.; TEX.CONST. art. I, sec. 10. To determine if this right has been violated, courts weigh the strength of four factors and balance their relative weights considering the conduct

2

of both the State and the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). These four factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the delay. *Id*.

Although no single factor is necessary or sufficient to establish that the right to a speedy trial has been violated, "[t]he length of the delay is, to some extent, a triggering mechanism, so that a speedy trial claim will not be heard [unless the delay is *prima facie* unreasonable]." *Shaw v. State*, 117 S.W.3d 883, 889 (Tex.Crim.App. 2003). If the delay is sufficient to trigger an inquiry, the State and the defendant each carry different evidentiary burdens with respect to the remaining factors. *See Cantu*, 253 S.W.3d at 283. "While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu*, 253 S.W.3d at 280. "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Id*. "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudicial or prove diligence in asserting his right to a speedy trial." *Id*. at 280-81.

If the defendant establishes his right to a speedy trial has been violated, the proper remedy is dismissal of the prosecution with prejudice. *Id*. at 281.

### *Standard of Review*

In reviewing a trial court's ruling, we review the legal aspects *de novo* and the factual components for abuse of discretion, keeping in mind that "[t]he balancing test as a whole . . . is a purely legal question." *Id.* at 282. Under the abuse of discretion standard, we view the evidence in a light most favorable to the ruling and defer to the trial court's assessment of a witness's

3

credibility and resolution of facts and reasonable inferences drawn therefrom. *Cantu*, 253 S.W.3d at 282.

## *Discussion*

The trial court did not err in concluding that Howard's right to a speedy trial was violated.

## 1. Length of Delay

This factor weighs heavily in Howard's favor. The length of the delay is the triggering mechanism for an analysis under *Barker* and is measured from the time the defendant is "accused"—that is, once he is arrested or charged. *Cantu*, 253 S.W.3d at 280; *Shaw*, 117 S.W.3d at 889. In general, a delay approaching one year is unreasonable enough to be "presumptively prejudicial" and trigger an inquiry into the remaining *Barker* factors. *Cantu*, 253 S.W.3d at 281; *Shaw*, 117 S.W.3d at 889; *Zamorano v. State*, 84 S.W.3d 643, 648-49 n.26 (Tex.Crim.App. 2002). As was conceded by the State, approximately six years elapsed from the time Howard was "accused" until he requested that his case be disposed of and ultimately dismissed. This six-year delay is more than sufficient to trigger a speedy trial analysis under *Barker* and is presumptively prejudicial.

## 2. Reason for Delay

This factor also weighs in Howard's favor. Once it has been determined that a presumptively prejudicial delay has occurred, the State bears the initial burden of providing a justification for the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex.Crim.App. 1994). When considering the State's proffered reasons for the delay, we assign different weights to different reasons. *Shaw*, 117 S.W.3d at 889. "Some reasons are valid and serve to justify the delay, while other reasons are not valid and do not serve to justify the delay." *Shaw*, 117 S.W.3d at 889. An

4

intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts, is weighed less heavily against the State; a valid reason is not weighed against the State at all; and delay attributable to the defendant may constitute a waiver of a claim for a speedy trial. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex.Crim.App. 1999). Although a finding of "bad-faith delay" renders relief almost automatic, a finding of mere negligence will not become "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Zamorano*, 84 S.W.3d at 649, *quoting Doggett v. U.S.*, 505 U.S. 647, 656-57, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520 (1992).

There is nothing in the record to indicate the delay was anything but negligence on the State's part. At the hearings on Howard's motion, the State admitted it knew that Howard was back in prison in Louisiana by September 2006 and that it waited nearly six months thereafter to place a detainer on him. The State also conceded Howard could have been brought back anytime during the nearly six-year delay but was not. When asked by the trial court to explain the six-year delay, the State—unable to produce evidence—attributed the delay to the State's leeriness to proceed without knowing if Howard would be released early due to good behavior. Characterizing its actions as negligence "at most," the State insisted that it "didn't make a conscious effort to delay [prosecution]" or act in "bad faith." Regardless of whether the lengthy delay in prosecuting Howard for attempted rape was purposeful or negligent, the State failed to meet its burden of providing a justification for the delay. *See State v. Empak, Inc.*, 889 S.W.2d 618, 624 (Tex.App.--Houston [14th Dist.] 1994, pet. ref'd)(concluding that State's negligence in failing to serve summons on defendant "because the case had just fallen between the cracks" militated against the State).

On appeal, the State does not attempt to excuse its negligence, except to argue that the delay was, in part, caused by Howard. Neither of the State's two arguments is persuasive, however.

First, the State argues that the source of the delay was "[Howard's] arrest on a fugitive warrant that returned him to federal prison in Louisiana and his subsequent total failure to request a speedy trial . . . he had the opportunity to file a motion for speedy trial if he had desired one." According to the State, Howard had the opportunity to move for a speedy trial in 2006 when his bondsman would have told him of the indictment or in 2007 when he read the detainer. The State, however, did not produce any evidence corroborating these assertions. There is no testimony from the bondsman or evidence that the detainer was served on Howard.

Second, the State argues "the prosecutor's lack of knowledge as to why the case had not been tried may reflect that the record is silent as to the reasons for the delay" and thus precludes us from presuming a valid reason or a deliberate attempt to prejudice Howard. *See Dragoo v. State*, 96 S.W.3d 308, 314 (Tex.Crim.App. 2003)("In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay). But contrary to the State's assertion, the record is not silent as to why Howard was not brought back from Louisiana to face prosecution. As noted above, prosecutors chose not to do so because they were unsure if Howard would be released early due to good behavior.

### 3. Assertion of Right

Notwithstanding that Howard sought dismissal, rather than a speedy trial, and did so approximately six years after his initial arrest, this factor also weighs in Howard's favor.

6

A defendant's assertion of his right to a speedy trial is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Zamorano*, 84 S.W.3d at 651. The longer a defendant delays in asserting his right to a speedy trial, the more his inaction weighs against him because it indicates strongly that he did not really want a trial and that he was not prejudiced by not having one. *Shaw*, 117 S.W.3d at 890; *Dragoo*, 96 S.W.3d at 314. But when a defendant is unaware of the indictment or warrant, he cannot be faulted for failing to invoke his right to a speedy trial. *See Doggett*, 505 U.S. at 653-54, 112 S.Ct. at 2692 (explaining that a defendant cannot be taxed for failing to invoke his speedy trial right when unaware of the indictment); *Phillips v. State*, 650 S.W.2d 396, 400 (Tex.Crim.App. 1983)("Obviously, appellant cannot be faulted for failing to assert a right he did not know he was entitled to . . . ."); *Empak*, 889 S.W.2d at 624 ("Empak could not have been expected to demand a speedy trial prior to being notified of the prosecution by service of summons."). In such a situation, we consider whether and how the defendant asserted his right to a speedy trial once he became aware of the charge against him. *See Phillips*, 650 S.W.2d at 400.

Viewed in the light most favorable to the trial court's ultimate ruling and deferring to the trial court's credibility determination, the evidence supports the trial court's implied finding that Howard was unaware that he had been indicted in Texas. The trial court could have reasonably drawn such a conclusion from Howard's letter and from the State's failure to adduce any evidence that Howard was aware of the indictment before writing the letter. Although the State suggested that Howard was lying, the trial court was free to believe Howard rather than the State. *See Cantu*, 253 S.W3d at 285. The trial court's finding is further bolstered by the fact that Howard was unrepresented by counsel at all relevant times while imprisoned in Louisiana. Only after

7

Howard wrote the trial court and was arrested did he receive court-appointed counsel, who moved for dismissal shortly thereafter.

Granted, when Howard did act, it was not to demand a speedy trial, but to move that the indictment be dismissed. The State argues that because Howard chose to do this, we should conclude that this factor weighs heavily against him. *See Phillips*, 650 S.W.2d at 401 (noting that a request to dismiss the charges attenuates the strength of a speedy trial claim because it indicates a desire to avoid a trial altogether rather than to obtain a speedy one). But a request to dismiss is warranted in some cases if defense counsel legitimately feels that the long delay caused enough prejudice that requesting a prompt trial is no longer in the defendant's best interest. *Compare Zamorano*, 84 S.W.3d at 651 n.40 (motion to dismiss may alert the court and the State both of the delay and a defendant's lack of acquiescence instead of an attempt to escape trial completely), *with State v. Guerrero*, 110 S.W.3d 155, 161 (Tex.App.--San Antonio 2003, no pet.)(holding that because evidence was lost, request for dismissal of charges was appropriate and that a speedy trial was no longer in defendant's best interest). This is such a case.

At the hearings on Howard's motion, defense counsel argued vehemently that notwithstanding the State's belated readiness to proceed then, the nearly six-year delay caused Howard so much prejudice that dismissal, rather than a speedy trial, was warranted and proper. Further, and just as important, there is no evidence that Howard was taking advantage of the delay for tactical reasons and thus quietly acquiescing in the six-year period of inaction. *Compare Phillips*, 650 S.W.2d at 401, 403 (no evidence that appellant himself was taking advantage of the delay), *with Barker*, 407 U.S. at 534-36, 92 S.Ct. at 2194 (evidence showed that appellant acquiesced in the delay, gambling on the acquittal of a co-defendant). Thus, by moving to

dismiss the indictment, Howard alerted the trial court and the State both of the delay and the lack of acquiescence and that a speedy trial was no longer in his best interest. *See Zamorano*, 84 S.W.3d at 651 n.40; *Guerrero*, 110 S.W.3d at 161. Moreover, because of the State's official negligence in not prosecuting Howard for nearly six years as he sat unrepresented in prison, Howard's burden to prove diligence in asserting his right to a speedy trial was not as onerous as it would otherwise be. *See Cantu*, 253 S.W3d at 280-81.

### 4. Prejudice

This factor, like the others, favors Howard. When assessing any possible prejudice suffered by a defendant, we do so in light of the interests a speedy trial was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the defendant's anxiety and concern; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. 2193. Of these interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*.

The defendant bears the burden to make some showing of prejudice, although a showing of actual prejudice is not required. *State v. Munoz*, 991 S.W.2d 818, 826 (Tex.Crim.App. 1999). Indeed, prejudice is not limited to the specifically demonstrable, and affirmative proof of particularized prejudice is not essential in every case. *Doggett*, 505 U.S. at 655, 112 S.Ct. at 2692. Affirmative proof of particularized prejudice "can rarely be shown" in a case where there has been an excessive delay and the defendant is attempting to prove that his defense was impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. In such a case, it is presumed that a defendant has suffered prejudice because excessive delay "compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655, 112

S.Ct. 2692. If a defendant makes a *prima facie* showing of prejudice, the State bears the burden to show that he suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Munoz*, 991 S.W.2d at 826.

Contrary to the State's assertion, Howard met his burden to show that his ability to defend against the charge for attempted rape was impaired.[1] At the hearings on Howard's motion, defense counsel asserted Howard was prejudiced by the passage of time because Howard's memory had faded and witnesses who could "characterize the [victim] in a different light" had disappeared. According to counsel, Howard's diminished memory had prevented him from obtaining information necessary to mount a defense numerous times. Counsel posited that if Howard had been brought back, Howard could have "point[ed] to places, . . . people, . . . events, dates, times, street addresses, because [Howard's] memory would've been fresh [then]." As recognized by the Texas Court of Criminal Appeals, an incarcerated defendant unaware that he has been indicted suffers prejudice from excessive delay because he is completely deprived of the opportunity to prepare his defense until notified of the charges. *See Phillips*, 650 S.W.2d at 402 ("In short, the potential danger inherent in any delay becomes even more hazardous when, as here, the danger is not even perceived."). Like the defendant in *Phillips*, Howard was unaware of the accusation against him and thus had "no reason to move for a speedy trial, no occasion to seek the taking of depositions, and indeed no motivation to initiate 'his own investigative efforts to mitigate [the] erosive effects of the passage of time.'" *Phillips*, 650 S.W.2d at 402.

The State argues that since the offense report indicated that the attempted rape took place

---

[1] In his brief, Howard concedes that "[t]he first two listed interests [that the speedy trial right was created to protect: (1) preventing oppressive pretrial incarceration and (2) minimizing the defendant's anxiety and concern] are not applicable in the instant case . . . ." Accordingly, we limit our discussion to whether Howard suffered prejudice because he was unable to prepare a defense.

while Howard and the victim were alone in his apartment, Howard did not prove he suffered prejudice because he never explained how the evidence he could no longer obtain was relevant. But the State failed to offer any evidence to meet its burden of showing Howard suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay" as required. *Munoz*, 991 S.W.2d at 826. Moreover, the State's reliance on *State v. Smith*, 76 S.W.3d 541 (Tex.App.--Houston [14th Dist.] 2002, pet. ref'd) and *Prihoda v. State*, 352 S.W.3d 796 (Tex.App.--San Antonio 2011, pet. ref'd) as support for its argument that Howard's assertions are insufficient to demonstrate prejudice—actual or presumptive—is misplaced.

In those cases, both defendants had the opportunity to prepare a defense but did not do so and waited three years until the eve of trial to seek dismissal based on speedy-trial grounds. *See Smith*, 76 S.W.3d at 551-53; *Prihoda*, 352 S.W.3d at 804-05. While both defendants made a *prima facie* showing of prejudice, the State produced evidence that they did not suffer serious prejudice beyond that which ensued from the ordinary and inevitable delay, and the defendants were unable to rebut the State's evidence with their bare assertions. *See Smith*, 76 S.W.3d at 551-53; *Prihoda*, 352 S.W.3d at 804-05. That is not the situation here. Unlike the defendants in *Smith* and *Prihoda*, Howard did not have the opportunity to prepare a defense. Whereas he was incarcerated, they were not; whereas he was not aware of the charge against him, they were; and whereas he was not represented by counsel at all relevant times, they were. *See Smith*, 76 S.W.3d at 551-53; *Prihoda*, 352 S.W.3d at 804-05. Further, Howard, unlike the defendants in *Smith* and *Prihoda*, sought dismissal shortly after learning of the charge against him. Moreover, the State here produced no evidence to rebut Howard's *prima facie* showing of prejudice.

### 5.   Balancing

11

The presumptively prejudicial delay due to the State's own negligence and no acceptable reason for the delay weigh against the State. Although Howard did not affirmatively request a speedy trial, he did move for dismissal quickly when he learned that he had been indicted. On the whole, this weighs in his favor. So too does the fact that he made a *prima facie* showing of prejudice that the State could not rebut. Balancing these factors, we must conclude the trial court did not err in granting Howard's motion to dismiss. Accordingly, we overrule the State's issue on appeal.

## CONCLUSION

The trial court's dismissal order is affirmed.


July 31, 2013

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

12