

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00704-CR

Richard **SALAZAR**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CR2671
Honorable Sid Harle, Judge Presiding[1]

Opinion by:  Beth Watkins, Justice

Sitting:  Beth Watkins, Justice
Liza A. Rodriguez, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: November 15, 2023

AFFIRMED

Appellant Richard Salazar challenges the trial court's denial of his motion to dismiss for lack of a speedy trial. We affirm.

## BACKGROUND

On March 23, 2021, a Bexar County grand jury indicted Salazar for a shooting that occurred on December 23, 2020. The trial in this cause was set for August 15, 2022. On that date,

---

[1] The Honorable Ron Rangel is the presiding judge of the 379th Judicial District Court of Bexar County, and he presided over Salazar's trial and signed the final judgment of conviction in this case. However, the Honorable Sid Harle heard and ruled on the speedy trial motion at issue in this appeal.

the State filed a motion for continuance arguing that its expert witness would not be available to testify until after August 22, 2022. The same day, Salazar filed a discovery motion that included a request for "an immediate and speedy trial." Salazar also contemporaneously filed a separate "Motion to Dismiss for Violation of Defendant's Speedy Trial Rights." The record does not show that Salazar made any speedy trial requests prior to August 15, 2022.

On August 24, 2022, the parties convened to select a jury for Salazar's trial. Prior to jury selection, the trial court heard Salazar's motion to dismiss on speedy trial grounds. After hearing testimony from Salazar, the trial court orally denied the motion to dismiss, and the trial began the same day.[2] The jury found Salazar guilty of attempted deadly conduct, and the trial court signed a final judgment of conviction. Salazar then timely filed this appeal.

## ANALYSIS

In his sole issue on appeal, Salazar argues the delay in the trial of his case violated his Sixth Amendment right to a speedy trial.

### Standard of Review and Applicable Law

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to a speedy trial. U.S. CONST. amend. VI; *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). When a defendant claims he was denied his right to a speedy trial, courts consider four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "If the defendant can make a threshold showing that the interval between accusation and

---

[2] The clerk's record contains a written order that appears to grant Salazar's speedy trial motion. The order reads: "On this 24 day of August, 2022, came to be heard the foregoing Motion and it appears to the Court that the same should be: **GRANTED It is found by the court that the Defendant's right to a speedy trial has been violated**. Furthermore, the delay in this case has been prejudicial to the Defendant, and this cause is ordered **DISMISSED**." (all emphasis in original). The words "ordered **DISMISSED**" are circled, and the order is signed by the judge who heard the speedy trial motion. However, the record shows the case proceeded to trial after this order was signed, and Salazar has not argued that the trial court granted his motion.

trial is 'presumptively prejudicial,' then a court must consider each of the remaining *Barker* factors and weigh them." *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016). In reviewing the trial court's application of the *Barker* factors, "we give almost total deference to the trial court's historical findings of fact that the record supports, and we draw reasonable inferences from those facts necessary to support the trial court's findings." *Id*. at 767–68. We may not consider evidence that was not before the trial court when it ruled. *Id*. at 768. "Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question that we review *de novo*." *Id*.

### *Application*

### *Length of Delay*

In conducting a *Barker* analysis, "[w]e measure the length of delay from (1) the time the accused is arrested or charged to (2) the time of trial or the defendant's demand for a speedy trial." *State v. Lampkin*, 630 S.W.3d 559, 563 (Tex. App.—San Antonio 2021, no pet.). A delay "approaching one year" is presumptively unreasonable so as "to trigger the *Barker* enquiry." *Balderas*, 517 S.W.3d at 768 (internal quotation marks omitted). Here, Salazar was arrested on December 24, 2020 and demanded a speedy trial on August 15, 2022—a delay of twenty months. The State concedes on appeal that this delay "is sufficient to trigger an analysis of the other *Barker* factors."

### *Reasons for Delay*

In assessing the reasons for the delay, "we assign different weights to different reasons." *Id*. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 531. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government

rather than with the defendant." *Id*. In contrast, "[d]elay caused by either the defendant or his counsel weighs against the defendant." *Balderas*, 517 S.W.3d at 768. "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Id*. (internal quotation marks omitted).

During the speedy trial hearing, Salazar's counsel represented to the trial court that the case had been "set for trial on numerous occasions," and Salazar testified he had "repeatedly" asked for a jury trial. However, the record before this court does not indicate that the case was set for trial before August 15, 2022. The State filed one motion for continuance, on the grounds that its expert witness was not available to testify until later that same month. There is no evidence that this continuance was intended to hamper the defense, so while it is relevant to our analysis, it does not weigh heavily against the State. *See Barker*, 407 U.S. at 531.

On appeal, the State argues that "[m]uch of the delay in this case . . . was due to the COVID-19 pandemic, and suspended jury trials as a result thereof." After it denied Salazar's motion to dismiss and started the voir dire process, the trial court told the jury venire, "Thank you very much for your patience in being here. . . . We're, again, trying to resolve as many cases as we can that resulted because of the pandemic." While the delays caused by the pandemic may weigh against the State, they do not weigh heavily. *See State v. Conatser*, 645 S.W.3d 925, 929–30 (Tex. App.—Dallas 2022, no pet.) (months of delay "dominated by the unforeseeable initial impact of the COVID-19 pandemic" not attributable to State).

We must also consider whether any of the delay can be attributed to Salazar himself. *See Balderas*, 517 S.W.3d at 768. The record shows that Salazar was represented by five attorneys during this case:

- The first attorney was appointed to represent Salazar when he was arrested on December 24, 2020. Salazar testified that he "never saw her" because he hired the second attorney in January of 2021.

- The second attorney filed a November 3, 2021 motion to withdraw. The motion stated the second attorney was "unable to effectively communicate with" Salazar and that Salazar had "expressed his desire to retain other counsel." The trial court granted this motion to withdraw on November 4, 2021.

- A third attorney began representing Salazar in December of 2021. Salazar testified that attorney withdrew because "[s]he did not speak Spanish."

- Salazar's fourth attorney, who began representing him in March of 2022, filed a motion to withdraw on May 12, 2022. The motion stated the withdrawing attorney "had difficulty communicating with and reviewing the case and possible defenses with [Salazar] due to his behavior." The motion also stated that Salazar "was hostile and disrespectful to [the fourth attorney's] paralegal" and that Salazar had indicated "he did not want [the fourth attorney] to continue representing him." The record does not contain a written order granting this motion to withdraw.

- On May 12, 2022, the trial court appointed a fifth attorney to represent Salazar. That attorney represented Salazar during the speedy trial hearing and the trial on the merits.

During the speedy trial hearing, Salazar agreed with the State that each new attorney needed time to familiarize themselves with the case before they could effectively represent him. However, we see nothing in the record to support a conclusion that the case would have proceeded to trial earlier if not for the withdrawal of Salazar's attorneys. Because the record contains no evidence indicating that Salazar's changes in counsel delayed the trial, we cannot say this factor weighs against him. *See id.*

*Defendant's Assertion of Right to Speedy Trial*

"The third *Barker* factor—the defendant's assertion of his right to a speedy trial—is entitled to strong evidentiary weight in determining whether the defendant has been deprived of that right." *Id.* at 771. "A defendant's lack of a timely demand for a speedy trial indicates strongly

that he did not really want one." *Id*. "[I]naction weighs more heavily against a violation the longer the delay becomes." *Id*. (internal quotation marks omitted).

Salazar first asserted his right to a speedy trial in a discovery request he filed on August 15, 2022—twenty months after he was arrested and the same day his trial was originally set to begin. That same day, he filed a separate motion which alleged he had been deprived his right to a speedy trial but primarily argued he was "entitled to an immediate dismissal[.]" During the hearing on that motion, Salazar's counsel similarly asked the court to "dismiss this case." Because Salazar failed to assert a right to a speedy trial for twenty months and sought a dismissal rather than a speedy trial, the third factor weighs against him. *See id.*; *see also State v. Smith*, 76 S.W.3d 541, 550 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

*Prejudice to the Defendant*

"The fourth *Barker* factor focuses on prejudice to the defendant because of the length of delay." *Balderas*, 517 S.W.3d at 772. This prong requires us to "consider three interests of defendants that the Speedy Trial Clause was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Id*. "The last interest is the most important because the fairness of the criminal-justice system is distorted when a defendant is unable to adequately prepare his defense." *Id*. While a defendant bears the burden "to make some showing of prejudice," he need not prove actual prejudice. *Id*. "Excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify." *Id*.

Here, the May 12, 2022 form order appointing Salazar's fifth attorney has a checkmark next to the word "jail," which appears to indicate Salazar was in jail when the trial court signed the order. But Salazar did not argue either below or in this court that he was subjected to "oppressive pretrial incarceration," and the State's brief asserts that Salazar "was on bond pre trial,

so the first [prejudice] interest is not implicated." Moreover, while Salazar's motion to dismiss argued that Salazar was "no longer able to assist in [his] own defense due to the State's delay in prosecution," he did not offer any factual details or present any evidence to support that claim.

Salazar's claim of prejudice primarily arose out of his interest in minimizing his own anxiety and concern. During the speedy trial hearing, Salazar testified that he suffered emotionally during the delay because his adult children "look[ed] at [him] cross-eyed . . . like, What's going on, Dad? Like, you're still going to court." He also testified that he "lost three jobs" and "suffered tremendously on wages" while the charges were pending. He estimated that he lost approximately $20,000 in wages and explained he was "about to lose [his] house" and was considering filing for bankruptcy protection. Because the State did not challenge or offer any evidence to rebut Salazar's testimony on these points, "it is at least some evidence of the type of 'anxiety' that the Supreme Court considers under the prejudice prong of *Barker*." *Zamorano v. State*, 84 S.W.3d 643, 654 (Tex. Crim. App. 2002).

*Balancing the Factors*

Having outlined the evidence relevant to the four *Barker* factors, "we must now balance them." *Balderas*, 517 S.W.3d at 773. And we must do so "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id*. (internal quotation marks omitted).

Weighing in favor of finding a violation of Salazar's speedy trial right are the facts that the delay was presumptively prejudicial and caused him emotional and financial hardship. *See Zamorano*, 84 S.W.3d at 654. We note, however, that we recently refused to reverse a conviction on speedy trial grounds under facts showing a much longer delay. *See Velasco v. State*, __ S.W.3d __, No. 04-22-00030-CR, 2023 WL 4608763, at *8 (Tex. App.—San Antonio July 19, 2023, no pet.) (rejecting speedy trial claim based on delay of three years). Additionally, the record shows

Salazar did not seek a speedy trial ruling until twenty months after his arrest, at which point he primarily sought an outright dismissal. *See Cantu v. State*, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008) ("Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one."). Salazar also did not show that the delay hampered his ability to put forward a defense. *See Ramirez v. State*, 897 S.W.2d 428, 433–34 (Tex. App.—El Paso 1995, no pet.). We hold that the four factors, balanced together, weigh against finding a violation of Salazar's right to a speedy trial.

We overrule Salazar's sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH